IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHARLES SCOTT, # 199675,    *
                            *
     Plaintiff,             *
                            *  CIVIL ACTION NO. 21-00249-KD-B
vs.                         *
                            *
LT. MCKENZIE, *et al.*,     *
                            *
     Defendants.            *


### AMENDED REPORT AND RECOMMENDATION[1]

Plaintiff Charles Scott, an Alabama prison inmate who is proceeding *pro se* and *in forma pauperis*, filed the instant action seeking relief under 42 U.S.C. § 1983. (Doc. 1). This case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R), and it is now before the Court on the amended answer and amended special report filed by Defendant Brandon McKenzie (Docs. 32, 33), which have been converted to a motion for summary judgment. (See Doc. 39). For the reasons set forth below, it is recommended that the motion

---

[1] The undersigned's previous report and recommendation (Doc. 53) is **WITHDRAWN**. This amended report and recommendation is being entered solely for the purpose of clarifying that the undersigned's recommendation is that summary judgment be granted in favor of Defendant Brandon McKenzie, and to put Plaintiff Scott on notice of the undersigned's intention to recommend *sua sponte* in a separate report and recommendation that summary judgment likewise be granted in favor of Defendant Nathan McQuirter, pursuant to Federal Rule of Civil Procedure 56(f)(3).

for summary judgment be **GRANTED**, and that Plaintiff's claims against Defendant McKenzie be **DISMISSED with prejudice**.

Additionally, **Plaintiff Scott is hereby placed on <u>notice</u>** by the filing of this amended report and recommendation of the undersigned's intention to recommend that summary judgment be granted in favor of Defendant Nathan McQuirter, pursuant to Federal Rule of Civil Procedure 56(f)(3).

## I.  <u>BACKGROUND</u>

Plaintiff Charles Scott brings this action against Defendants Correctional Lieutenant Brandon McKenzie and Correctional Officer Nathan McQuirter[2] under 42 U.S.C. § 1983.  Scott alleges that Defendant McKenzie failed to protect him from being stabbed by another inmate at Holman Correctional Facility ("Holman"),[3] and that Defendants McKenzie and McQuirter were deliberately indifferent to his medical needs following the stabbing.[4]

---

[2] The record reflects that Defendant McKenzie was a Correctional Lieutenant at Holman Correctional Facility at the time of the events alleged in Scott's complaint.  (<u>See</u> Doc. 33-1 at 1).  He is currently employed as a Correctional Captain at Holman.  (<u>Id.</u>). Defendant McQuirter is no longer employed by the Alabama Department of Corrections, but he was employed as a Correctional Officer at Holman Correctional Facility at the time of the events alleged in Scott's complaint.  (<u>See</u> Doc. 24-2 at 1; Doc. 31 at 1).

[3] Holman Correctional Facility is located in Escambia County, Alabama, which lies within the Southern Division of the Southern District of Alabama.  <u>See</u> 28 U.S.C. § 81(c)(2).

[4] Scott filed this action in the Northern District of Alabama in April 2021.  (<u>See</u> Docs. 1, 2).  This action was transferred to the Southern District of Alabama in May 2021.  (Docs. 4, 5, 6).

In his complaint,[5] Scott alleges that on February 26, 2020, while he "was working as a segregation runner" and "was sweeping on the low side of 'K' t[ie]r" at Holman, an announcement "was made for phone call time."  (Doc. 1 at 4).  Scott alleges that "Sgt. Manuel" started the "phone call time" process, which required inmates to be let out of their cells to use the telephone, but he then "had to leave and Lt. McKenzie continued assisting" with the process.  (Id. at 4-5).  Scott contends that, in doing so, McKenzie "totally ignored" Alabama Department of Corrections ("ADOC") protocols requiring inmates in the segregation unit to be handcuffed "for security purposes" upon leaving and returning to their cells.  (Id. at 5).

Scott alleges that McKenzie let inmate Robert Fitts out of his segregation cell to use the telephone "without cuffing him or searching him[,]" and "[d]uring inmate Fitts' attempt to use the phone he came up with a prison made knife and started stabbing [Scott] with it."  (Id. at 8).  Scott alleges that McKenzie "hit

---

[5] Because Scott's complaint was signed under penalty of perjury (see Doc. 1 at 7), the factual allegations in the complaint may be used as an affidavit opposing the motion for summary judgment. See Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam).  To function as an opposing affidavit, a complaint must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c)(4). Accordingly, the Court will consider the portions of Scott's complaint that meet these requirements in ruling on the motion for summary judgment.

the code upon observing what was happening to [him,]" and Officers McQuirter and Mitchell restrained inmate Fitts by handcuffing him "after Lt. McKenzie had sprayed mace in his eyes." (Id.). According to Scott, the "situation could have been prevented" had McKenzie followed ADOC protocols by searching and handcuffing inmate Fitts before allowing him to leave his cell to use the telephone. (Id.).

Scott further alleges that when he "requested to be taken to medical for treatment[,]" McKenzie refused to allow him to be seen by a doctor and said that Scott "would be ok[ay], it don't look to be life threaten[ing]." (Id.). Scott states that Officers McQuirter and Mitchell were "only allowed to take" inmate Fitts "to medical because he was sprayed and when an inmate is sprayed there has to be justification in the report to show why he was sprayed." (Id. at 8-9). However, Scott contends that Defendant McQuirter "still could have taken [Scott] to the infirmary." (Id. at 9).

Scott states that he is suing Defendant McKenzie in his individual capacity "for deliberate indifference and inadequate security" in violation of the "8th and 14th Amend[ments]" to the United States Constitution. (Id.). Scott states that he is suing Defendant McQuirter in his individual capacity "for deliberate indifference . . . under the 14th Amend[ment.]". (Id.). Scott is

seeking $200,000 in compensatory damages and $600,000 in punitive damages from each Defendant.  (Id.).

On April 1, 2022, Defendants McKenzie and McQuirter filed an answer and a supporting special report, to which they attached as exhibits their sworn affidavits; the affidavit of Terry Raybon, the Warden of Holman; the declaration of Cynthia Lopez, an employee of prison medical provider Wexford Health Sources, Inc. ("Wexford"); the redacted Holman Duty Post Logs and Post Assignment Rosters for February 20, 2020; and Scott's medical records for February and March 2020.  (Docs. 23, 24).  In their special report, Defendants McKenzie and McQuirter stated that in any instance of an inmate-on-inmate assault, "there would be a duty officer report, an incident report, disciplinaries for the inmates, and medical records for treatment of any injuries of the inmates or correctional staff."   (Doc. 24 at 4).   Defendants further represented that there "are no institutional records concerning any incident on or around the date alleged by Scott involving Scott or the inmate he says attacked him, Fitts[,]" and that "no records exist for either inmate indicating treatment for wounds (in Scott's case) or decontamination following the use of a chemical spray (in Fitts' case)."  (Id. at 4-5).  In addition to the lack of records concerning the alleged incident, Defendants denied having any recollection of an incident between Scott and inmate Fitts.  (Docs. 24-1, 24-2).

After reviewing Defendants' filings, the undersigned noted that they appeared to assume that the date of the alleged incident was February 20, 2020, but it was not clear from Scott's handwritten complaint whether the date of the alleged incident was February 20, 2020, or February 26, 2020. (Doc. 26 at 1 n.1). Accordingly, the Court ordered Scott to clarify the date on which he alleged the subject incident occurred. (Id. at 2). In response, Scott stated: "I Charles Scott do hereby swear beyond penalty of perjury that the correct date of the incident did happen on February 26, 2020 at the Holman Correctional Facility in the Segregation Unit." (Doc. 27). In light of Scott's assertion that the subject incident occurred on February 26, 2020 (rather than February 20, 2020, which Defendants previously believed to be the date of the alleged incident), the undersigned ordered Defendants McKenzie and McQuirter "to file an amended answer and a separate amended special report (including amended exhibits) . . . which address the inmate-on-inmate stabbing incident that is alleged to have occurred on February 26, 2020." (Doc. 28).[6]

---

[6] On January 13, 2023, attorney Laura Howell of the Alabama Attorney General's office moved to withdraw from further representation of Defendant McQuirter in this case. (Doc. 31). Attorney Howell stated that McQuirter's employment with ADOC had been terminated the previous fall, and that after successfully contacting him to confirm that his forwarding contact information was correct, she was now unable to reach him in order to obtain the information necessary to file an amended affidavit, amended answer, and amended special report as ordered by the Court, despite having made multiple attempts to contact him. (Id. at 1-2). After

In response to the Court's order, Defendant McKenzie filed an amended answer and amended special report on January 13, 2023.[7] (Docs. 32, 33).   Like the original special report, the amended

---

requiring counsel to file McQuirter's last known address under seal (Docs. 34, 35), the Court entered an order that was sent directly to McQuirter and provided him with the following alternatives:

> [I]f Defendant McQuirter wants Ms. Howell to continue to represent him in this action, he is hereby **ORDERED** to contact her and inform her of that fact no later than **February 16, 2023.** If Ms. Howell is contacted and informed by Defendant McQuirter that he wishes her to continue representing him in this action, Ms. Howell shall withdraw her motion and shall file Defendant McQuirter's amended answer and special report by **February 28, 2023.** Alternatively, Defendant McQuirter may elect to proceed *pro se* or to retain new counsel to represent him in this matter. If he so elects, he is **DIRECTED** to file an amended answer and special report on or before **February 28, 2023.**

(Doc. 36 at 3 (emphasis in original)).   When McQuirter took no action in response to the Court's order, the Court granted attorney Howell's motion to withdraw from further representation of McQuirter in this action.   (Doc. 38).

Scott filed a motion for default judgment against Defendants McKenzie and McQuirter on March 7, 2023.   (Doc. 37).   On August 4, 2023, the undersigned entered a report and recommendation recommending that Scott's motion for default judgment be denied as to both Defendants.   (Doc. 51).   With respect to Defendant McQuirter, the undersigned recommended that Scott's request for a default judgment be denied because this is not a case in which McQuirter totally failed to plead or otherwise defend, and because Scott's complaint does not state a plausible Eighth Amendment claim for deliberate indifference to a serious medical need against McQuirter.   (Id. at 7-9).   The Court adopted the report and recommendation and denied Scott's motion for default judgment on September 7, 2023.   (Doc. 52).

---

[7] The amended answer and amended special report were filed on behalf of Defendant McKenzie only.   (See Docs. 32, 33).

special report states that "there are no institutional records concerning any incident on or around the date alleged by Scott involving Scott or the inmate he says attacked him, Fitts." (Doc. 33 at 4). The amended special report further states that "McKenzie has no recollection of any incident occurring between Inmates Scott and Fitts at all[,]" and "despite . . . Scott's allegations that he was denied medical care following the incident while Inmate Fitts received care, no records exist for either inmate indicating treatment for wounds (in Scott's case) or decontamination following the use of a chemical spray (in Fitts' case)." (Id. at 4-5). The amended special report asserts that "these facts show that McKenzie did not violate Scott's Eighth Amendment rights" and "also call into question the truthfulness of the allegations in Scott's complaint." (Id. at 5). Attached as exhibits to the amended special report are the affidavits of Defendant McKenzie and Warden Raybon; the declaration of Cynthia Lopez; the redacted Holman Duty Post Logs and Post Assignment Rosters for February 26, 2020; and Scott's medical records for February and March 2020. (Docs. 33-1 - 33-5).

In his most recent affidavit, Defendant McKenzie states that he is currently employed as a Correctional Captain at Holman but was serving as a Correctional Lieutenant at Holman at the time of the events alleged in Scott's complaint. (Doc. 33-1 at 1). McKenzie states that he "was not scheduled for duty on February

26, 2020, but from reviewing the shift logs for that day, it looks like [he] was called in late during the Second Shift, which runs from 2:00 p.m. to 10:00 p.m." (Id.). According to McKenzie, when he is called and asked to come in to help out on a shift due to staffing shortages, that "[n]ormally . . . gets notated on the post assignment roster for the shift." (Id.). McKenzie states that when he is called in to help out on a shift, he "help[s] wherever [he is] asked: going to the dining hall to help feed the inmates, doing security checks or helping with phone time in restricted housing (RHU), helping with inmate sick call, or going and working a dorm." (Id. at 1-2). McKenzie avers that he does not "remember any of the events alleged in . . . Scott's complaint ever happening, and [he] would certainly remember if an inmate had been stabbed in front of [him]." (Id. at 2). McKenzie "therefore den[ies] all of . . . Scott's allegations." (Id.). McKenzie states that "[if] someone had been stabbed in front of [him], [he] would have immediately gotten him some medical attention[,]" and "[n]ormally the shift commander also fills out paperwork for an incident where an inmate gets stabbed." (Id.). McKenzie concludes that "[i]f an incident *had* occurred, [he] would have conducted [his] duties in the utmost professional manner and ensured that the situation was handled according to ADOC policy." (Id. (emphasis in original)).

In his affidavit, Warden Raybon avers: "After a search of our inmate record management system (IMAS), no records were found relating to any incident that occurred on or around February 26, 2020 involving inmate Scott or the allegations described in his Complaint." (Doc. 33-2 at 1). Warden Raybon states that "there is no duty officer report, incident report, body chart, or disciplinary charge that can be located related to the incident alleged in the complaint." (Id.). Warden Raybon states that he has "also searched our system again for any documents related to inmate Scott's allegation that he was stabbed by inmate Robert Fitts[,]" and "[n]o records were found regarding any such incident." (Id.). Warden Raybon states that if an incident such as the one alleged by Scott had occurred, "ADOC policy is to complete and file a duty officer report, incident report, body chart, and disciplinary charge against the attacking inmate for the incident." (Id.).

In her declaration, Ms. Lopez states that she is an employee of Wexford, which held the contract with ADOC to provide health care and mental health services to Alabama state incarcerated inmates beginning on April 1, 2018. (Doc. 33-5 at 1). Ms. Lopez states that she has reviewed, along with another nurse, the medical chart of inmate Robert Fitts. (Id.). According to Ms. Lopez, "[t]here are no entries whatsoever with regard to any medical care provided to Mr. Fitts for the month of February 2020[,]" and inmate

Fitts' medical chart "is devoid of any information setting forth that he received any medical care or attention whatsoever during the month of February 2020." (Id. at 2).

The redacted Holman Post Assignment Roster for the second shift on February 26, 2020 reflects that Officer McQuirter was assigned as the RHU Floor Officer. (Doc. 33-3 at 2). In addition, the redacted Holman Duty Post Log contains entries indicating that Lieutenant McKenzie conducted security checks in the restricted housing unit at 1:19 p.m. and 7:14 p.m. on February 26, 2020. (Id. at 6, 14).

Scott's medical records for February and March 2020 reflect that he was transferred from Holman to Limestone Correctional Facility ("Limestone") on or about March 2, 2020. (See Doc. 33-4 at 4-6). The medical records reflect no treatment, complaints, or diagnoses relating to knife wounds. (See id.). A body chart completed at Limestone on March 2, 2020 noted no stab wounds or other markings and noted no complaints of pain. (See id. at 6). In a Restrictive Housing Unit Pre-Placement Screening completed at Limestone on March 2, 2020, Scott denied having recently been harmed or assaulted and denied that anyone had recently threatened or tried to harm him. (See id. at 35).

In an order dated April 17, 2023, the Court converted the amended answer and amended special report into a motion for summary judgment, explained to the parties the procedure for such motions

under Federal Rule of Civil Procedure 56, and afforded the parties an opportunity to submit additional information or evidence in support of or in opposition to the motion by June 2, 2023. (Doc. 39). In the conversion order, the undersigned directed Scott to inform the Court in writing, by June 2, 2023, if he desired to continue the litigation of this action. (Id. at 4). The undersigned cautioned Scott that failure to respond by the specified date would be considered by the Court to be an abandonment of this action and would result in the motion for summary judgment being treated as unopposed. (Id.).

On May 5, 2023, Scott filed a motion requesting the production of certain documents and video footage pertaining to the incident alleged in his complaint. (Doc. 41). The Court granted Scott's motion in part and ordered Defendant McKenzie to file and produce the following items to Scott by May 31, 2023: (1) any incident reports, duty officer reports, investigative reports, or disciplinary records for any incident involving Scott and/or inmate Fitts during the month of February 2020; (2) Scott's medical file, including body charts, for the months of April and May 2020; (3) copies of all administrative rules, policies, regulations, or guidelines in effect in February 2020 relating to the use of handcuffs on segregation unit inmates when releasing them from their cells to use the telephone; and (4) a statement verifying that a search for video depicting a physical encounter between

Scott and inmate Fitts was conducted, and if applicable, that no such video exists.  (Doc. 42).

On May 25, 2023, in response to Scott's request for administrative rules, policies, regulations, or guidelines in effect in February 2020 relating to the use of handcuffs on segregation unit inmates when releasing them from their cells to use the telephone, Defendant McKenzie filed copies of Administrative Regulation 334 (Administrative Segregation), Administrative Regulation 434 (Disciplinary Segregation), and Standard Operating Procedure 009-012 (Administrative Segregation/Protective Custody).  (Docs. 46, 47, 48).  On May 31, 2023, Defendant McKenzie filed additional documents in response to Scott's discovery requests and the Court's order, including Scott's medical records for the months of April and May 2020; the affidavits of Warden Raybon[8] and Kim Singleton[9]; and the Duty

---

[8] In his most recent affidavit, Warden Raybon avers: "There is no video footage of this alleged incident.  Video footage from that time period no longer exist.  This is a true and factual statement." (Doc. 50-5).

[9] In her affidavit, Ms. Singleton, who is an administrative assistant at ADOC's Central Office, states that a search of ADOC's inmate record management system found no records "relating to any incident that occurred during February 2020 involving Inmate Scott or Inmate Fitts."  (Doc. 50-1 at 1).  Ms. Singleton avers that she "could locate no duty officer report, incident report, body chart, or disciplinary charge (or disciplinary paperwork) for either inmate during that month[,]" and "[t]he only documentation [she] found related to either inmate was a record of Inmate Fitts being outgated from the prison for medical treatment on February 7, 2020." (Id.; see Doc. 50-2).

Officer Report and Incident Report generated as a result of inmate Fitts being transported from Holman for a scheduled medical appointment (unrelated to the incident alleged by Scott) on February 7, 2020.  (Doc. 50).

On May 25, 2023, the Court *sua sponte* extended the time for Scott to submit evidence or information in response to the converted motion for summary judgment through June 9, 2023.  (Doc. 49).  However, to date, Scott has not informed the Court in writing that he desires to continue the litigation of this action, nor has he submitted any information, evidence, or argument in opposition to the converted summary judgment motion.  Accordingly, the motion for summary judgment will be treated as unopposed and is ripe for consideration.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by showing or pointing out to the district court that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Id. at 322-24.

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (per curiam) (quoting Celotex, 477 U.S. at 324).  "To defeat a motion for summary judgment, the nonmoving party may not rely on 'mere allegations.' It must raise 'significant probative evidence' that would be sufficient for a jury to find for that party." LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998) (citations omitted).  In other words, there is no genuine issue for trial where "the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party[.]"  Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In considering whether Defendant McKenzie is entitled to
summary judgment in this case, the Court views the facts in the
light most favorable to Plaintiff Scott.  See Comer v. City of
Palm Bay, Fla., 265 F.3d 1186, 1192 (11th Cir. 2001) (per curiam)
("We view the evidence and all factual inferences raised by it in
the light most favorable to the non-moving party, and resolve all
reasonable doubts about the facts in favor of the non-moving
party.").

> The requirement to view the facts in the nonmoving
> party's favor extends only to "genuine" disputes over
> material facts.  A genuine dispute requires more than
> "some metaphysical doubt as to the material facts."  A
> "mere scintilla" of evidence is insufficient; the non-
> moving party must produce substantial evidence in order
> to defeat a motion for summary judgment.

Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (2009) (per curiam)
(internal citations omitted).  In addition, "[t]here is no burden
upon the district court to distill every potential argument that
could be made based upon the materials before it on summary
judgment."  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587,
599 (11th Cir. 1995).  Furthermore, where "opposing parties tell
two different stories, one of which is blatantly contradicted by
the record, so that no reasonable jury could believe it, a court
should not adopt that version of the facts for purposes of ruling

on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

**III. DISCUSSION**

    **A.   Qualified Immunity.**

As noted *supra*, Scott is suing Defendants in their individual capacities. (See Doc. 1 at 9). Defendants have asserted the defense of qualified immunity against Scott's federal constitutional claims asserted against them in their individual capacities. (See Doc. 23 at 2; Doc. 24 at 4, 6-15; Doc. 32 at 2; Doc. 33 at 4, 6-13).

"The defense of qualified immunity completely protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (per curiam) (citations omitted). Since the record evidence reflects that Defendants were acting within the scope of their discretionary authority at all relevant times, the burden shifts to Scott to show (1) that Defendants violated a constitutional right, and (2) that the right was clearly established at the time of the alleged violation.[10]  See id.

_____

[10] "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.  In other words, existing precedent must have placed the statutory or constitutional

The Court now turns to Scott's asserted claims to determine whether the summary judgment evidence creates a genuine issue of material fact as to whether Defendant McKenzie violated a constitutional right.

**B.    Eighth Amendment – Failure to Protect.**

As noted above, Scott seeks redress pursuant to 42 U.S.C. § 1983 for an Eighth Amendment violation by Defendant McKenzie based on an attack by a fellow inmate.  (See Doc. 1).  Section 1983 creates a private right of action against any person acting under the color of state law who deprives another of a federal constitutional right.  See 42 U.S.C. § 1983.  The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003); Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).  The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines

---

question beyond debate." Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted).  For a right to be clearly established, either (1) "a materially similar case has already been decided"; (2) there is "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." Gaines v. Wardynski, 871 F.3d 1203, 1208-09 (11th Cir. 2017) (quotation omitted).  The controlling authority must be "from the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." Id. at 1209.

imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Eleventh Circuit has stressed "that a 'prison custodian is not the guarantor of a prisoner's safety.'" Purcell v. Toombs County, Ga., 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted).

"A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, *of which the official is subjectively aware*, exists and the official does not respond reasonably to the risk.'" Caldwell, 748 F.3d at 1099 (emphasis in original) (citation omitted). To survive summary judgment on an Eighth Amendment claim under § 1983, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

The first element — a substantial risk of serious harm — is

measured against an objective standard. Caldwell, 748 F.3d at
1099. Under this standard, the alleged condition must be "so
extreme that it poses an unreasonable risk of serious damage to
the prisoner's health or safety." Richardson v. Johnson, 598 F.3d
734, 737 (11th Cir. 2010) (per curiam). The second element — the
prison official's deliberate indifference to the risk — "has both
a subjective and an objective component." Marbury, 936 F.3d at
1233. "To satisfy the subjective component, a plaintiff must
produce evidence that the defendant 'actually (subjectively) knew
that an inmate faced a substantial risk of serious harm.'"
Caldwell, 748 F.3d at 1099 (citation and alterations omitted).
The defendant "must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists, and
he must also draw the inference." Farmer, 511 U.S. at 837. "The
known risk of injury must be a strong likelihood, rather than a
mere possibility before a [prison official's] failure to act can
constitute deliberate indifference." Brown v. Hughes, 894 F.2d
1533, 1537 (11th Cir. 1990) (per curiam) (quotations omitted). To
meet the objective component, a plaintiff must produce evidence
that the defendant "responded to the known risk in an unreasonable
manner, in that he or she 'knew of ways to reduce the harm' but
knowingly or recklessly declined to act." Marbury, 936 F.3d at
1233 (citation omitted). "Merely negligent failure to protect an
inmate from attack does not justify liability under section

1983[.]" <u>Hughes</u>, 894 F.2d at 1537.  The third element — causation — requires a plaintiff to "show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." <u>Marbury</u>, 936 F.3d at 1233 (citation omitted).

In his complaint, Scott alleges that Defendant McKenzie let inmate Fitts out of his segregation cell to use the telephone at the same time Scott was serving as a segregation runner, and that inmate Fitts attacked Scott with a prison-made knife. (Doc. 1 at 4-5, 8).  Scott states that he is bringing a claim against McKenzie for "inadequate security" based on McKenzie's failure to search and handcuff inmate Fitts prior to letting him out of his cell to use the telephone.  (<u>Id.</u> at 5-6, 8-9).  Scott asserts that McKenzie's failure to handcuff inmate Fitts violated ADOC "protocol" requiring inmates in the segregation unit to be handcuffed "upon leaving and returning" to their cells for security purposes.  (<u>Id.</u> at 5, 8).  Scott states that the attack on him "could have been prevented" had McKenzie followed ADOC procedures and searched and handcuffed inmate Fitts before allowing him to leave his cell to use the telephone.  (<u>Id.</u> at 8).

As noted above, to survive summary judgment on his Eighth Amendment failure-to-protect claim, Scott must demonstrate, *inter alia*, that Defendant McKenzie was deliberately indifferent to a substantial risk of serious harm; that is, Scott must show that McKenzie subjectively knew of a substantial risk of serious harm

to him, and that McKenzie failed to respond to that risk in an objectively reasonable manner.   See Caldwell, 748 F.3d at 1099. Scott has failed to make either showing.

Scott's only allegation against Defendant McKenzie relating to his failure-to-protect claim is that McKenzie violated ADOC security protocols by failing to search and handcuff inmate Fitts prior to letting him out of his segregation cell to use the telephone. (See Doc. 1 at 5, 8).   However, it is well-established that "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000).   And "[m]ere negligence . . . is insufficient to establish deliberate indifference." Kelley v. Hicks, 400 F.3d 1282, 1285 (11th Cir. 2005) (per curiam).   Although Scott has alleged that McKenzie's actions violated ADOC security protocols, he has offered no additional evidence or allegations indicating that McKenzie's conduct rose beyond negligence or even gross negligence to the level of deliberate indifference. See, e.g., Lorenzo v. Williams, 2018 U.S. Dist. LEXIS 143181, at *17-18, 2018 WL 3863529, at *6 (S.D. Ga. July 30, 2018) (finding plaintiff's allegations that defendant correctional officer violated a policy requiring two prison guards to be present for prisoner escorts when he handcuffed inmate and thus rendered him helpless to defend against multiple fatal stab wounds inflicted by another inmate

insufficient to establish deliberate indifference, because failure to follow procedures, by itself, is at most a form of negligence); Buckner v. Jones, 2009 U.S. Dist. LEXIS 60428, at *31, 2009 WL 2136505, at *10 (M.D. Ala. July 15, 2009) (finding that officer's alleged violation of jail procedures by leaving cell doors open during a routine head count, which allowed other inmates to enter plaintiff's cell and attack him, did not rise to the level of deliberate indifference where there was nothing to indicate that the officer was aware of specific facts suggesting the existence of a substantial risk of serious harm to plaintiff); Berry v. Sellers, 2016 U.S. Dist. LEXIS 39803, at *7, 2016 WL 1178394, at *3 (N.D. Ga. Mar. 28, 2016) ("Plaintiff . . . does not allege that prison officials had a conscious or callous indifference to his rights, or that prison officials knew of a substantial risk of serious harm to Plaintiff.  Plaintiff alleges only that prison officials failed to follow proper security procedures.  This allegation is insufficient to state a claim of deliberate indifference under Section 1983.").

Significantly, Scott offers nothing to suggest that Defendant McKenzie was aware that Scott faced a substantial risk of serious harm prior to his alleged attack by inmate Fitts.  Scott does not allege that even he was aware or fearful of a possible attack by inmate Fitts or any other inmate at Holman on the date of the incident, nor does he allege that McKenzie or any other prison

official was apprised that inmate Fitts or any other inmate at Holman posed a risk to his health or safety. See McGill v. Duckworth, 944 F.2d 344, 349 (7th Cir. 1991) (stating that a plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety"), overruled in part on other grounds by Farmer, 511 U.S. at 828. There is no evidence or allegation that Scott and inmate Fitts (or any other inmates at Holman) were considered enemies at the time the incident allegedly occurred. Scott does not allege that inmate Fitts previously harmed or threatened him or any other inmate. Scott also does not allege facts indicating that McKenzie or any other prison officials knew or should have known that inmate Fitts had a propensity for violence or was likely to harm another inmate based on his past conduct or any other characteristics or prior events. Nor does Scott present evidence showing that he faced a generalized, substantial risk of serious harm from inmate violence at Holman generally or the segregation unit specifically.

Scott's allegation that Defendant McKenzie failed to follow proper security procedures, without more, fails to meet his burden to show that McKenzie was subjectively aware of a substantial risk of serious harm prior to the alleged attack. See Goodman v. Kimbrough, 718 F.3d 1325, 1334 (11th Cir. 2013) ("[T]he fact that the officers deviated from policy or were unreasonable in their

actions—even grossly so—does not relieve [plaintiff] of the burden of showing that the officers were subjectively aware of the risk; in other words, he cannot say, 'Well, they should have known.' Were we to accept that theory of liability, the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not."). Although Scott may assume that McKenzie should have known that his failure to follow security protocols would create some additional risk of injury to inmates, he alleges no facts and offers no evidence to suggest that Defendant McKenzie was or should have been aware that his actions created "a strong likelihood, rather than a mere possibility" of injury. See Hughes, 894 F.2d at 1537 (quotation omitted). Moreover, Scott's allegations reflect that once Defendant McKenzie *did* became aware of a substantial risk of serious harm to Scott, he responded in a prompt and reasonable manner. Specifically, Scott's complaint states that "McKenzie hit the code upon observing what was happening to [Scott]" and "sprayed mace in [inmate Fitts'] eyes." (Doc. 1 at 8).

Accordingly, Scott has failed to establish an Eighth Amendment violation against Defendant McKenzie for failing to protect him from the alleged attack by inmate Fitts, and McKenzie is thus entitled to qualified immunity on Scott's Eighth Amendment failure-to-protect claim. Therefore, it is recommended that

summary judgment be **GRANTED** in favor of Defendant McKenzie on this claim.

### C.    Eighth Amendment – Failure to Provide Medical Care.

Scott also claims that Defendants McKenzie and McQuirter were deliberately indifferent to his medical needs following the alleged attack by inmate Fitts.  (Id. at 5-6, 8-9).  Specifically, Scott alleges that when he "requested to be taken to medical for treatment" after the incident, McKenzie refused to allow him to be seen by a doctor so that he could be treated.  (Id. at 8).  Scott alleges that McKenzie "simply said . . . that [he] would be ok[ay], it don't look to be life threaten[ing]."  (Id.).  Scott further alleges that Officers McQuirter and Mitchell were "only allowed" to take inmate Fitts to the health care unit following the incident, but McQuirter "still could have taken [Scott] to the infirmary." (Id. at 8-9).

"Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment."  Martinez v. Burns, 459 F. App'x 849, 851 (11th Cir. 2012) (per curiam) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  "However, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Farrow, 320 F.3d at 1243 (quotation omitted).

To establish an Eighth Amendment violation for the denial of medical care, a plaintiff must show "(1) a serious medical need;

(2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." McDaniels v. Lee, 405 F. App'x 456, 458 (11th Cir. 2010) (per curiam) (citing Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009)).

To satisfy the first element, "a plaintiff must set forth evidence of an objectively serious medical need." Farrow, 320 F.3d at 1243. "[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, 320 F.3d at 1243 (quotation omitted). "In either case, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quotation omitted).

To meet the second element, "a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." Farrow, 320 F.3d at 1243. "A defendant is deliberately indifferent to a plaintiff's serious medical need when he (1) has subjective knowledge of a risk of serious harm; (2) disregards that risk; and (3) acts with more than gross negligence." Patel v. Lanier County, Ga., 969 F.3d 1173, 1188 (11th Cir. 2020) (quotation and alterations omitted). The Eleventh Circuit has "repeatedly found that an official acts

with deliberate indifference when he or she knows that an inmate
is in serious need of medical care, but he fails or refuses to
obtain medical treatment for the inmate." McElligott v. Foley,
182 F.3d 1248, 1255 (11th Cir. 1999) (quotation omitted).

In his complaint, Scott alleges that inmate Fitts "started
stabbing [him] with" a prison-made knife.  (Doc. 1 at 8).  However,
Scott does not allege that he sustained any injuries as a result
of Fitts' efforts to stab him, nor does he indicate how any such
injuries presented themselves to Defendants McKenzie or McQuirter.
Thus, the allegations in Scott's complaint do not demonstrate the
existence of a serious medical need.  Relatedly, Scott's
allegations do not demonstrate that either Defendant had knowledge
of a risk of serious harm to Scott and disregarded the risk by
conduct surpassing the level of gross negligence.  Furthermore,
Scott does not allege that Defendants' failure or refusal to allow
him to seek immediate medical treatment resulted in additional
pain, injury, or aggravation of an injury.

Nor do Scott's medical records reflect the existence of a
serious medical need - or any injury whatsoever - arising from the
incident alleged in his complaint.  There are no medical records
reflecting that Scott reported being injured in an inmate-on-
inmate stabbing incident at Holman on February 26, 2020, nor are
there any records reflecting that he was assessed with or treated
for knife wounds at or near the time of the alleged incident.  (See

28

Doc. 33-4; Doc. 50-3).  Notably, a body chart was completed on March 2, 2020, only *five days* after Scott was allegedly stabbed, which documented no stab wounds or other markings on Scott and noted that he had no complaints of pain.  (Doc. 33-4 at 6).  On the same date, Scott denied having recently been harmed or assaulted and denied that anyone had recently threatened or tried to harm him.  (See id. at 35).

Thus, the record is devoid of evidence demonstrating that Defendant McKenzie was deliberately indifferent to Scott's objectively serious medical needs caused by the alleged attack by inmate Fitts.  Accordingly, Defendant McKenzie is entitled to qualified immunity on Scott's claim that he was deliberately indifferent to his serious medical needs, and it is recommended that summary judgment be **GRANTED** in favor of Defendant McKenzie on Scott's Eighth Amendment medical claim against him.

## IV.   NOTICE OF JUDGMENT INDEPENDENT OF THE MOTION

Rule 56 of the Federal Rules of Civil Procedure permits the Court, after it has given notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f)(3).  By filing this amended report and recommendation, the undersigned **notifies Plaintiff Scott** of the Court's intention to consider a recommendation to the presiding District Judge that she enter summary judgment, *sua sponte*, in

favor of Defendant Nathan McQuirter on the sole claim raised against him in this action.

As noted *supra*, Scott has raised Eighth Amendment claims against both Defendants for acting with deliberate indifference to his medical needs following the alleged attack by inmate Fitts. According to Scott, he "requested to be taken to medical for treatment" after the alleged attack by inmate Fitts, but Defendant McKenzie refused to allow him to be seen by a doctor so that he could be treated and "simply said . . . that [Scott] would be ok[ay], it don't look to be life threaten[ing]." (Doc. 1 at 8). Scott further alleges that Defendant McQuirter and Officer Mitchell were "only allowed to take" inmate Fitts to the health care unit following the incident, but he asserts that Defendant McQuirter "still could have taken [Scott] to the infirmary." (Id. at 8-9).

In a report and recommendation dated August 4, 2023, the undersigned recommended that the Court deny Scott's request for entry of default judgment against Defendant McQuirter, despite McQuirter's failure to file an amended answer and amended special report as directed. (Doc. 51). As relevant here, the undersigned found that entry of a default judgment against Defendant McQuirter was not warranted because Scott "has not stated a plausible claim against Defendant McQuirter." (Id. at 8). The undersigned explained:

> The allegations in Scott's complaint do not demonstrate that Scott had a serious medical need.  While Scott alleges that inmate Fitts "started stabbing" him, he does not allege that he sustained any injuries resulting from the stabbing, nor does he indicate how any such injuries presented themselves to Defendant McQuirter. Additionally, Scott's assertion that Defendant McQuirter was ordered to take only inmate Fitts to the infirmary actually cuts against his assertion that Defendant McQuirter was deliberately indifferent to a medical need. Furthermore, the allegations do not reflect Defendant McQuirter's knowledge of a risk of serious harm to Scott and that he disregarded the risk by conduct that is more than gross negligence.

(Id. at 7-8).

As previously discussed in connection with Scott's related medical claim against Defendant McKenzie, Scott does not allege that he sustained any injuries as a result of inmate Fitts' efforts to stab him, nor does he indicate how any such injuries presented themselves to Defendants McKenzie and McQuirter.   Likewise, Scott's medical records fail to show the existence of a serious medical need – or, indeed, any injury whatsoever – arising from the incident alleged in his complaint.   On the contrary, a body chart completed only five days after Scott was allegedly attacked by inmate Fitts documented no stab wounds or other markings on Scott and noted that he had no complaints of pain.  (Doc. 33-4 at 6).  On the same date, Scott denied having recently been harmed or assaulted and denied that anyone had recently threatened or tried to harm him.  (See id. at 35).  Thus, neither the allegations in

Scott's complaint nor the record evidence demonstrate the existence of a serious medical need.

Relatedly, Scott's allegations do not demonstrate that Defendant McQuirter had knowledge of a risk of serious harm to Scott and disregarded the risk by conduct surpassing the level of gross negligence, nor is there any evidence to suggest such. In addition to the lack of any evidence that Scott was actually injured, Scott's allegation that Defendant McQuirter was "only allowed" to take inmate Fitts to the infirmary runs counter to his assertion that Defendant McQuirter was deliberately indifferent to Scott's medical needs. Moreover, Scott does not allege or offer evidence indicating that the failure to take him to the infirmary following the alleged incident resulted in additional pain, injury, or aggravation of an injury. Thus, the record is bereft of evidence demonstrating that Defendant McQuirter was deliberately indifferent to Scott's objectively serious medical needs caused by his alleged "stabbing" by inmate Fitts.

For the reasons stated in this report, after a review of all the relevant facts, the undersigned intends to recommend that summary judgment be entered on behalf of Defendant McQuirter on Scott's claim that McQuirter was deliberately indifferent to his serious medical needs, and that Scott's sole claim against Defendant McQuirter in this action be dismissed.

However, Defendant McQuirter did not file an amended answer and amended special report as directed by the Court, and he is therefore not a party to the instant motion for summary judgment. Given that Scott presents no facts that would lead to a different disposition of his Eight Amendment medical claim against Defendant McQuirter than that against Defendant McKenzie, the Court maintains that its findings of facts and conclusions of law regarding the claim presented against Defendant McQuirter would be essentially identical to those regarding the claim presented against Defendant McKenzie. Therefore, Plaintiff Scott is hereby placed on notice by this report and the foregoing analysis of his claims of the Court's intention to consider summary judgment in favor of Defendant McQuirter.

Accordingly, within the fourteen days provided for filing objections to this amended report and recommendation, Plaintiff Scott shall **SHOW CAUSE**, in writing, why the court should not enter summary judgment pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure in favor of Defendant McQuirter on Scott's 42 U.S.C. § 1983 claim against him. In responding to this notice, Plaintiff Scott should refer to Federal Rule of Civil Procedure 56, including the following provision:

> A party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents,

33

> electronically stored information, affidavits or
> declarations, stipulations (including those made for
> purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish
> the absence . . . of a genuine dispute, or that an
> adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).

Plaintiff Scott cannot rely only on his unsworn pleadings but must respond to this notice by filing sworn affidavits, depositions, or other materials set forth in Rule 56(c)(1)(A) — or by citing such evidence already of record in this matter — which set forth facts presented in a form that would be admissible evidence demonstrating that there is a genuine dispute as to a material fact for trial in this case. If Plaintiff Scott fails to file sworn affidavits or other acceptable evidence as set forth in Rule 56, the Court will accept the evidence identified above as undisputed for purposes of evaluating whether the Court should grant summary judgment in Defendant McQuirter's favor. See Fed. R. Civ. P. 56(e). Plaintiff Scott's failure to follow the requirements of Rule 56(c)(1) in opposing the proposed summary judgment could result in a recommendation from the undersigned Magistrate Judge to the presiding District Judge that she enter summary judgment in favor of Defendant McQuirter and enter final judgment in this case without a trial.

## V.   <u>CONCLUSION</u>

Based on the foregoing, the undersigned recommends that summary judgment be **GRANTED** in favor of Defendant Brandon McKenzie, and that Plaintiff Scott's claims against Defendant McKenzie in this action be **DISMISSED with prejudice.**

Furthermore, Plaintiff Scott is placed on **notice** by the filing of this amended report and recommendation of the **undersigned's intention to recommend that the Court grant summary judgment in favor of Defendant Nathan McQuirter,** who has not filed an amended answer and amended special report and is therefore not a party to the instant motion for summary judgment.  Scott is afforded the opportunity to include within any objections he has to this amended report and recommendation any reasons that should preclude the entry of summary judgment on behalf of Defendant McQuirter.

The instructions that follow contain important information regarding objections to the amended report and recommendation of the Magistrate Judge.

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should

note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this **11th** day of **December, 2023.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**